ALLAN H. GRANT, (CSB No. 213658)
GRANTS LAW FIRM
3890 11th Street #400
Riverside, CA 92501
Telephone: (951) 544-5248
Facsimile: (866) 858-6637
allan@grants-law.com

Attorneys for Defendant & Cross-Complainant
NXT NOIR LLC and JODI WHIT

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERMINAL B INTL, LLC | CASE NO.:  5:22-cv-01792-SSS-SHK |
| Plaintiff, | |
| v. | ANSWER, |
| | AFFIRMATIVE DEFENSES, AND |
| NXT NOIR, LLC and JODI WHIT | COUNTERCLAIMS FOR DECLARATORY RELIEF |
| Defendants. | |
| ------------------------------------------------- | |
| NXT NOIR, LLC | |
| Cross – Complainant. | |
| v. | **JURY TRIAL DEMANDED** |
| TERMINAL B INTL, LLC | |
| Cross – Defendant. | |

Defendants, NXT NOIR, LLC and JODI WHIT, ("Defendants" or "Cross-Complainant") by and through its attorney, Allan HOWARD GRANT hereby submit its Answer and Affirmative Defenses to the Complaint of Plaintiff TERMINAL B INTL, LLC , ("Plaintiff" or "Cross-Defendant"). The paragraphs in this Answer are numbered to respond with the paragraph numbers in Plaintiff's Complaint. Any and all allegations in Plaintiff's Complaint that are not specifically admitted are hereby denied.

Defendants states as follows:

## NATURE OF THE ACTION

This is an action for <u>infringement</u> on several <u>of Plaintiff's trademarks</u> under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for <u>trade dress</u> infringement, <u>unfair competition and false designation of origin</u> under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for <u>dilution</u> under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and <u>related claims of trademark infringement and unfair competition under the statutory and common laws of the State of California</u>, all arising from the NEXT NOIR's unauthorized use of the TERMINAL B trademarks ("Terminal B Marks") in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendant's candle goods.

**ANSWER**: Defendants admits that Plaintiff has brought this Complaint for:

(1) infringement of Plaintiff's trademarks, (2) trade dress, (3) unfair competition and false designation of origin, (4) dilution and (5) substantial and related claims of trademark infringement and unfair competition under the statutory and common laws of the State of California. Defendants deny that it has infringed any of Plaintiff's (trademarks namely LAX, JFK, SFO, ORD, LHR, and KIN) and those trademark rights, trade dress rights, and deny the remaining allegations of paragraph 1. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 1 and therefore deny the same.

2. Plaintiff seeks injunctive and monetary relief.

**ANSWER**: Defendants admit that Plaintiff is seeking injunctive relief and monetary damages. Defendants deny the remaining allegations of paragraph 2.

## JURISDICTION

2

3. This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§1051 et seq., 28 U.S.C. §§ 1331, [1332(a)] and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

**ANSWER**: Defendants admit subject matter jurisdiction.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district, 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district, and 28 U.S.C. § 1391(b)(3), in that Defendant is subject to personal jurisdiction in this district with respect to this action, and there is no other district in which the action may otherwise be brought.

**ANSWER**: Defendants admit venue is proper.

## PARTIES

5. Plaintiff, Terminal B Intl, LLC (hereinafter "Terminal B"), is a limited liability company formed under the laws of California and doing business in Long Beach, California. The business that is relevant to this action concerns the manufacture and sale of travel-inspired, luxury candles and fragrances for home good products and accessories which utilize airport codes for product designation.

**ANSWER**: Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 5 and therefore denies the same.

6. Upon information and belief, Defendant NXT NOIR, LLC (hereinafter "NXT Noir"), is a limited liability company formed under the laws of California, and does

business in Murietta, California. Upon information and belief, Defendant has one (1) member: Jodi Whitfield who is a citizen of California. Upon information and belief, NXT Noir also manufactures and sells travel-inspired, candles which utilize airport codes for product designation.

**ANSWER**: Defendant admits that NXT NOIR, LLC is a limited liability company formed under California law. Defendants also admit the above information.

7. Upon information and belief, Defendant Jodi Whitfield (hereinafter "Whitfield"), is an individual who conducts substantial business within this district. Whitfield is directly and personally contributing, inducing, and engaging in the manufacture and sale of travel-inspired, candles which utilize airport codes for product designation.

**ANSWER**: Defendant Jodi Whitfield admits that she is an individual and that her NXT NOIR, LLC does business in the central district and that her LLC is engaging in the manufacture and sale of travel-inspired, candles which utilize airport codes. But, Defendant Jodi Whitfield does not engage in such activities personally. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 7 and therefore deny the same.

**FACTS**

A. Plaintiff and its TERMINAL B Marks

8. TERMINAL B is a luxury fragrance brand founded in 2020, which manufactures and sales travel-inspired, luxury candles and fragrances for home good products and accessories. TERMINAL B crafts one-of-a-kind scents to accompany each destination and utilizes the corresponding airport code for that location as the

name for each scented candle/fragrance.

**ANSWER**: Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 8 and therefore deny the same.

9. To date, Terminal B holds 1 trademark on the Principal Register in the United States Patent and Trademark Office and has 36 pending applications for (hereinafter "TERMINAL B MARKS") for candle products currently on the market and for candles intended to be released. The registered and applied for marks are provided in Table, and listed as follows: in Table 1.

**ANSWER**: Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 9 and therefore deny the same.

10. Attached as Exhibit 1 is a true and correct copy of the registration certificate for TERMINAL B's trademark for **TERMINAL B** Registration No. 6732813, which was issued by the United States Patent and Trademark Office on May 24, 2022.

**ANSWER**: Defendant asserts that Terminal B has *1 registered trademark* on the Principal Register for the mark **TERMINAL B**. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 10 and therefore deny the same.

11. To date, TERMINAL B currently uses 14 of its 36 applied-for TERMINAL B Marks for sale in commerce throughout the United States and has done so continuously since as early as July 1st, 2021 in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising and promotion of candles. Attached hereto as Exhibit 2 are photographs/copies of representative

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTER CLAIMS

samples of advertising materials showing Plaintiff's use of the TERMINAL B Marks in connection with these goods.

**ANSWER**: Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 11 and therefore deny the same.

12.   As a result of the widespread, continuous, and exclusive use of TERMINAL B Marks to identify its candle products and TERMINAL B as their source, TERMINAL B holds valid and subsisting federal and common law rights to the TERMINAL B Marks.

**ANSWER**: Defendants deny that TERMINAL B's marks have widespread, continuous, and exclusive use of its marks. Defendants assert that TERMINAL B does not hold any valid federal trademark rights for the following marks: LAX, JFK, SFO, ORD, LHR, and KIN.  Defendants further assert that TERMINAL B does not hold any common law trademark rights for the following marks: ORD, LHR, and KIN as they were filed with the UNITED STATES PATENT & TRADEMARK OFFICE (USPTO) as an "intent to use" marks and have no use in commerce. Furthermore, Defendants assert that a third party owns the trademark rights to "LAX & LUX CANDLES" as such TERMINAL B would not hold any common law trademark rights for the mark LAX. Lastly, Defendants assert that it holds superior common law rights to the following marks: JFK and SFO based on Defendants prior use of those marks in commerce prior to Terminal B's filing of its "intent to use" applications filed on those same marks with the USPTO. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 12 and therefore deny the same.

13.   TERMINAL B's marks are distinctive to both the consuming public and

Terminal B's trade.

**ANSWER**:  Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 13 and therefore deny the same.

14.     TERMINAL B has expended substantial time, money, and resources marketing, advertising, and promoting the candles sold under the TERMINAL B Mark including press, Google Ads, social media ads, trade shows, and fulfillment on special orders for marketing campaigns with its corporate partners. During the period from April 1, 2022 to August 1, 2022 alone, TERMINAL B has expended approximately Thirty Thousand US Dollars (USD $ 30,000) on the marketing, advertising, and promotion of the goods  sold under the TERMINAL B MARKS.

**ANSWER**:  Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 14 and therefore deny the same.

15.     TERMINAL B distributes, provides, and sells its candles under the TERMINAL B Mark through several trade channels, including: online through its e-commerce website located at https://www.terminalbstore.com; Amazon.com, its brick and mortar storefront; through its partnerships with local hotels and retailers, such as: the Andaz WeHo - a Hyatt Luxury Boutique Hotel located in Hollywood, California and West Elm; various gift and fashion boutiques around the country (Northern and Southern CA; MD; NY; MA; CO), at local merchant markets, and trade shows throughout the United States, to include New York, Houston, Las Vegas, and the like.

**ANSWER**:  Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 15 and therefore deny the same.

16.   Currently, TERMINAL B offers 14 candles and accompanying travel tins for sale for the following airport codes/destinations: CDG, CPT, EZE, SBA, HNL, LAX, DPS, ARV, SIN, KIX, LVR, NRT, DPT, and SCL.

**ANSWER**:   Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 16 and therefore deny the same.

17. TERMINAL B offers and sells its goods under its TERMINAL B Marks to individuals, namely, candle enthusiasts, avid travelers, retailers through business-to-business relationships that offer luxury home good products, and luxury hotels luxury.

**ANSWER**:   Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 17 and therefore deny the same.

18. The candles and accessories TERMINAL B offer under the TERMINAL B Marks are of high quality, comprising of custom, unique fragrance blends to reflect the environment of each destination, two wicks, a proprietary paraffin wax blend, high-quality jars and considerably slow burn time – averaging over 60 hours with proper use and care.

**ANSWER**:   Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 18 and therefore deny the same.

19. As a result of Plaintiff's expenditures and efforts, TERMINAL B has come to signify the high quality of the candles designated by the TERMINAL B Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to TERMINAL B.

**ANSWER**:  Defendants assert that Plaintiff is not alleging infringement of the TERMINAL B mark, as Defendants are not using the TERMINAL B mark anywhere on any of Defendants goods. Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 19 and therefore deny the same.

20. TERMINAL B Marks and the goods offered thereunder have received coverage in various media, including FORBES and SHOUTOUT LA, as well as other bloggers, social media pages and YouTube creators.

**ANSWER**:  Defendants are without sufficient knowledge or information to admit or deny the allegations of paragraph 20 and therefore deny the same.

21. As a result of its distinctiveness and widespread use and promotion throughout the United States, Plaintiff's TERMINAL B Mark is a famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendant alleged herein.

**ANSWER**:  Defendants assert that Plaintiff is not alleging infringement of the TERMINAL B mark, as Defendants are not using the TERMINAL B mark anywhere on any of Defendants goods. Plaintiff's TERMINAL B mark is not relevant to this matter.

Defendants deny that Plaintiff's TERMINAL B Mark**s** are famous trademark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c). Defendants further deny that Plaintiff's TERMINAL B Mark have become famous prior to the acts of the Defendants alleged herein particularly since most of Plaintiff's marks are in fact "intent to use" marks and "intent to use" applications filed with the USPTO, wherein Plaintiff do not have actual use of those marks in commerce.

Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 21 and therefore deny the same.

B. <u>Defendant's Unlawful Activities</u>

22. Upon information and belief, Defendants are engaged in the sale and promotion of travel-inspired candles.

**ANSWER**: Defendants are engaged in the sale and promotion of travel-inspired candles.

23. Upon information and belief, the NXT NOIR business was launched initially as a sole proprietorship by Whitfield with Jodi Whitfield serving as the sole proprietor, until formally organizing as an LLC on March 18th, 2022.

**ANSWER:** Defendants admit the allegations contained within paragraph 23.

24. Without TERMINAL B's authorization, and upon information and belief, beginning after TERMINAL B acquired protectable exclusive rights in its Marks, NXT NOIR and Whitfield adopted and began using marks similar or identical to TERMINAL B's Marks, which include: (hereinafter, the "Infringing Marks") in US commerce.

**ANSWER:** Defendants assert that TERMINAL B has **NO Protectable Rights** in the Infringing Marks (LAX, JFK, SFO, ORD, LHR, and KIN). Defendants also assert that TERMINAL B has **NO Exclusive Rights** in the Infringing Marks. Further, Defendants assert that TERMINAL B does **<u>not</u>** hold any federal trademark rights for the "Infringing Marks: LAX, JFK, SFO, ORD, LHR, and KIN." Defendants further

assert that TERMINAL B does **not** hold any common law trademark rights for the following marks: **ORD, LHR, and KIN** as they were filed with the USPTO as an "intent to use" marks and have **no** use in commerce. Furthermore, Defendants assert that a third party (Charla L. Fowlkes) owns the trademark rights to "**LAX & LUX CANDLES**" (Reg. No. 6,657,784) as such TERMINAL B would **not** hold any common law trademark rights for the mark **LAX**. Lastly, Defendants assert that it holds superior common law rights to the following marks: **JFK and SFO** based on Defendants prior use of those marks in commerce prior to Terminal B's filing of its "intent to use" applications filed on those same marks with the USPTO. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 24 and therefore deny the same.

25. The Infringing Marks adopted and used by NXT NOIR and Whitfield are both identical to or confusingly similar TERMINAL B Marks. For example, the Infringing marks KIN, LHR, ORD are marks that are identical to TERMINAL B's KIN, LHR, and ORD marks – marks which were applied for prior to NXT Noir's subsequent, intentional, and willful adoption.

**ANSWER:** Defendants deny that it is infringing Plaintiff's rights with respect to the following marks: KIN, LHR, and ORD. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 25 and therefore deny the same.

26. Upon information and belief, NXT NOIR and Whitfield has been engaged in the manufacture, distribution, provision, advertising, promotion, offering for sale, and sale of candles using Infringing Marks throughout California and possibly the US since as early as February 15, 2022. Attached hereto as Exhibit 3 are true and correct copies of NXT NOIR's promotion of its LAX candle, amongst other candles, which

uses the Infringing Mark.

**ANSWER:** Defendants admit that they are engaged in the manufacture, distribution, advertising, promotion, offering for sale, and sale of candles under the following marks: LAX, JFK, SFO, ORD, LHR, and KIN.  Defendants deny that they are Infringing any of Plaintiff's rights in the infringing mark. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 26 and therefore deny the same.

27. Upon information and belief, the candles that NXT NOIR and Whitfield have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold under the Infringing Mark are based upon the same airport code concept, utilizing the exact same color scheme and description of "travel inspired candles" as TERMINAL B. As well, in more than one instance, NXT NOIR has adopted similar phrasing/terminology and marketing schemes as TERMINAL B. See Exhibit 4.

**ANSWER:** Defendants deny that it is infringing any protectable Trade Dress of Plaintiff. Defendants deny that NXT NOIR has adopted similar phrasing/terminology. Defendants deny that NXT NOIR is infringing any similar marketing schemes as TERMINAL B. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 27 and therefore deny the same.

28. Upon information and belief, NXT NOIR and Whitfield have manufactured, distributed, provided, marketed, advertised, promoted, offered for sale, and sold its candles under the Infringing Marks via its website; social media, namely, Instagram; through faire.com; and at other local vendor markets or independent retailers within the State of California.

1

2     **ANSWER:** Defendants admit that they have sold candles under the following

3 marks: LAX, JFK, SFO, ORD, LHR, and KIN within the State of California.

4 Defendants deny that they infringed upon Plaintiff's rights. Defendants are without

5 sufficient knowledge or information to admit or deny the remaining allegations of

6 paragraph 28 and therefore deny the same.

7

8     29. Upon information and belief, NXT NOIR and Whitfield have marketed,

9 advertised, and promoted its candles under the Infringing Marks through Instagram

10 and online which directly overlaps with the advertising and promotional channels

11 currently in use by TERMINAL B. In fact, NXT NOIR has also targeted influencer

12 pages which were a part of TERMINAL B's marketing plan.

13

14     **ANSWER:** Defendants admit that they have sold candles online under the

15 following marks: LAX, JFK, SFO, ORD, LHR, and KIN. Defendants deny that they

16 infringed upon Plaintiff's rights. Defendants are without sufficient knowledge or

17 information to admit or deny the remaining allegations of paragraph 29 and therefore

18 deny the same.

19

20     30. Upon information and belief, NXT NOIR also offers and sells its candles

21 under the Infringing Marks to candle enthusiasts and avid travelers, and has taken

22 additional efforts to track and engage with TERMINAL B's social media customers

23 and engage with their accounts to circumvent the business relationships already held

24 by TERMINAL B. See Exhibit 5.

25

26     **ANSWER:** Defendants admit that they have sold candles online under the

27 following marks: LAX, JFK, SFO, ORD, LHR, and KIN. Defendants deny that they

28 infringed upon Plaintiff's rights. Defendants are without sufficient knowledge or

information to admit or deny the remaining allegations of paragraph 30 and therefore deny the same.

31. Upon information and belief, the candles offered under the Infringing Marks are of lesser quality, comprising paint cans, 1-wick and soy candles. It is also noteworthy to state that the Defendants have taken care to adopt TERMINAL B's copy, using language such as "food grade paraffin" when the products are actually believed to be soy candles.

**ANSWER:** Defendants deny that its candles are a lesser quality. Defendants deny that they infringed upon Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 31 and therefore deny the same.

32. On or about May 23, 2022, TERMINAL B's counsel sent a cease-and-desist letter to NXT NOIR objecting to their use of the Infringing Marks, as well as certain trade dress elements that were considered to be a colorable imitation of TERMINAL B's brand. Attached hereto as Exhibit 7 is a true and correct copy of counsel's May 23, 2022 cease and desist letter to NXT NOIR, with a requested deadline for response being June 6, 2022.

**ANSWER:** Defendants admit that they received a cease & desist letter. Defendants deny that it has infringed upon any of Plaintiff's rights. Defendants deny that they infringed upon Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 32 and therefore deny the same.

33. By or before June 2nd, 2022, NXT NOIR engaged counsel, Allan Grant,

who responded and requested an extension of time to respond to the letter. However, it was noted that between June 2, 2022 and June 7, 2022, NXT NOIR's counsel submitted seven (7) trademark applications on its behalf and provided no response to the letter until July 1st, 2022, a time after a second follow-up was sent to NXT NOIR's counsel.

**ANSWER:** Defendants admit the above information.

34. In NXT NOIR's response to TERMINAL B's demands for cessation of infringing Terminal B's Marks, they declined TERMINAL B's requests and, in-turn, asserted its rights to both applied for and unregistered marks. NXT NOIR also requested a co-licensing agreement, which TERMINAL B declined.

ANSWER: Defendants admit the above information.

35. On August 8th, 2022, after much correspondence between counsels to get NXT NOIR to cease its infringing use, TERMINAL B made a final demand for compliance with a response requested on August 10, 2022. TERMINAL B never received a response back from NXT Noir's counsel.

**ANSWER:** Defendants admit the above information.

36. To date, NXT NOIR has not removed any of its infringing products.

**ANSWER:** Defendants deny that they are infringing upon Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 36 and therefore deny the same.

37. NXT NOIR and Whitfield's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the NXT NOIR's candles and have and are likely to deceive the relevant consuming public into believing, mistakenly, that NXT NOIR's candles originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

**ANSWER:** Defendants deny any likelihood of confusion, mistake, and deception among the relevant consuming public as to the source or origin of the NXT NOIR's candles. Defendants deny deceive the relevant consuming public into believing, mistakenly, that NXT NOIR's candles originate from, are associated or affiliated with, or otherwise authorized by Plaintiff. Defendants deny that they infringed upon Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 37 and therefore deny the same.

38. Defendant's infringing acts as alleged herein have resulted in actual confusion as evidenced by several customers notating the similarities between the two brands and, at times, confusing NXT NOIR for TERMINAL B. See Exhibit 6.

**ANSWER:** Defendants deny any infringing acts. Defendants deny any actual confusion. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 38 and therefore deny the same.

39. Upon information and belief, NXT NOIR's acts are willful with the deliberate intent to trade on the goodwill of TERMINAL B Marks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's candles to NXT NOIR.

**ANSWER:** Defendants deny any infringing acts as well as any willful acts. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 39 and therefore deny the same.

40. NXT NOIR's acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

**ANSWER:** Defendants deny any infringing acts. Defendants deny causing, any damage or immediate irreparable harm to Plaintiff or to its valuable reputation and goodwill. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 40 and therefore deny the same.

### COUNT ONE (Federal Trademark Infringement)

41. Plaintiff repeats and realleges paragraphs 1 through 40 hereof, as if fully set forth herein.

**ANSWER:** Defendants repeats and re-alleges its answers set forth in paragraphs 1–40 of the Complaint as if fully set forth herein.

42. NXT NOIR and Whitfield's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of NXT NOIR's candles, and is likely to cause consumers to believe, contrary to fact, that NXT NOIR's candles are sold, authorized, endorsed, or sponsored by Plaintiff, or that NXT NOIR is in some way affiliated with or sponsored by Plaintiff. NXT NOIR's conduct therefore constitutes trademark infringement in

1

violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

2

3

**ANSWER:** Defendants assert that TERMINAL B has **NO Protectable Rights**

4

in the Infringing Marks (LAX, JFK, SFO, ORD, LHR, and KIN). Defendants also

5

assert that TERMINAL B has **NO Exclusive Rights** in the Infringing Marks. Further,

6

Defendants assert that TERMINAL B does **not** hold any federal trademark rights for

7

the "Infringing Marks: LAX, JFK, SFO, ORD, LHR, and KIN." Defendants further

8

assert that TERMINAL B does **not** hold any common law trademark rights for the

9

following marks: **ORD, LHR, and KIN** as they were filed with the USPTO as an

10

"intent to use" marks and have **no** use in commerce. Furthermore, Defendants assert

11

that a third party (Charla L. Fowlkes) owns the trademark rights to "**LAX & LUX**

12

**CANDLES**" (Reg. No. 6,657,784) as such TERMINAL B would **not** hold any

13

common law trademark rights for the mark **LAX**. Lastly, Defendants assert that it

14

holds superior common law rights to the following marks: **JFK and SFO** based on

15

Defendants prior use of those marks in commerce prior to Terminal B's filing of its

16

"intent to use" applications filed on those same marks with the USPTO. Defendants

17

are without sufficient knowledge or information to admit or deny the remaining

18

allegations of paragraph 42 and therefore deny the same.

19

20

43. Upon information and belief, NXT NOIR and Whitfield have committed the

21

foregoing acts of infringement with full knowledge of TERMINAL B's prior rights in

22

the TERMINAL B Marks and with the willful intent to cause confusion and trade on

23

Plaintiff's goodwill.

24

25

**ANSWER:** Defendants deny committing any infringement upon Plaintiff's

26

rights. Defendants are without sufficient knowledge or information to admit or deny

27

the remaining allegations of paragraph 43 and therefore deny the same.

28

44. NXT NOIR and Whitfield's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

**ANSWER:** Defendants deny causing any harm or injury to Plaintiff as there is no infringement. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 44 and therefore deny the same.

45. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, NXT NOIR and Whitfield's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**ANSWER:** Defendants deny Plaintiff is entitled any relief or injunctive relief, as there is no infringement. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 45 and therefore deny the same.

## COUNT TWO (Federal Unfair Competition)

46. Plaintiff repeats and realleges paragraphs 1 through 45 hereof, as if fully set forth herein.

**ANSWER:** Defendants repeats and re-alleges its answers set forth in paragraphs 1–45 of the Complaint as if fully set forth herein.

47. Pursuant to section 43(a) of the Lanham Act. a federal cause of action for unfair competition and prohibition of the sale of goods exists by use of: any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, which—(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

**ANSWER:** Defendants assert that they are **not** using any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 47 and therefore deny the same

48. NXT NOIR and Whitfield, without the consent or authority of TERMINAL B, has used and is continuing to adopt and use TERMINAL B's trademarks in commerce, including ORD, LHR, LAX, KIN and JFK, and in connection with travel-inspired candles that misrepresents the nature, characteristics and qualities of TERMINAL B's brand for luxury, travel inspired candles.

**ANSWER:** Defendants assert that TERMINAL B has **NO Protectable Rights** in the Infringing Marks (LAX, JFK, SFO, ORD, LHR, and KIN). Defendants also assert that TERMINAL B has **NO Exclusive Rights** in the Infringing Marks. Further, Defendants assert that TERMINAL B does **not** hold any federal trademark rights for

the "Infringing Marks: LAX, JFK, SFO, ORD, LHR, and KIN." Defendants further assert that TERMINAL B does **not** hold any common law trademark rights for the following marks: **ORD, LHR, and KIN** as they were filed with the USPTO as an "intent to use" marks and have **no** use in commerce. Furthermore, Defendants assert that a third party (Charla L. Fowlkes) owns the trademark rights to "**LAX & LUX CANDLES**" (Reg. No. 6,657,784) as such TERMINAL B would **not** hold any common law trademark rights for the mark **LAX**. Lastly, Defendants assert that it holds superior common law rights to the following marks: **JFK and SFO** based on Defendants prior use of those marks in commerce prior to Terminal B's filing of its "intent to use" applications filed on those same marks with the USPTO. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 48 and therefore deny the same.

49. NXT NOIR and Whitfield's use of TERMINAL B's trademarks in the context of commercial advertising and promotion for its candle line and said unlawful use has been willful and intentional. The willful and intentional aspect is underscored by NXT NOIR, by and through its counsel, filing and releasing approximately 6 new candles and filing seven (7) trademark applications, after receipt of a Cease & Desist letter. As well as several attempts to request their cessation of the promotion of infringing candles, whereby TERMINAL B has priority, in which case, they have chosen to disregard our requests.

**ANSWER:** Defendants deny that Plaintiff is entitled to any rights with respect to the following marks: LAX, JFK, SFO, ORD, LHR, and KIN, as there is no infringement. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 49 and therefore deny the same.

50. NXT NOIR also utilizes Faire.com, a searchable store locator tool, which

allows it to offer custom, wholesale candles comprising of unreleased airport codes in a manner that cuts off TERMINAL B's rights of expansion to additional destinations, while utilizing the corresponding airport codes. This positioning empowers NXT NOIR to cut off TERMINAL B's efforts to grow and is the precise kind of business interference that unfair competition laws were designed to protect against.

**ANSWER:** Defendants admit using "faire.com". Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 50 and therefore deny the same.

51. NXT NOIR and Whitfield's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of NXT NOIR's candles, and is likely to cause consumers to believe, contrary to fact, that NXT NOIR's candles are sold, authorized, endorsed, or sponsored by Plaintiff, or that NXT NOIR is in some way affiliated with or sponsored by Plaintiff.

**ANSWER:** Defendants deny any infringement in the following marks: LAX, JFK, SFO, ORD, LHR, and KIN. Defendants deny deceiving any consumers as to the origin, source, sponsorship, or affiliation of NXT NOIR's candles. Defendants deny Plaintiff's assertion that NXT NOIR is in some way affiliated with or sponsored by Plaintiff. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 51 and therefore deny the same.

52. NXT NOIR and Whitfield's unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

**ANSWER:** Defendants deny any infringement or unauthorized use of the following marks: LAX, JFK, SFO, ORD, LHR, and KIN. Defendants deny the allegation of any use of a false designation of origin or misleading description or representation of fact. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 52 and therefore deny the same.

53. Upon information and belief, NXT NOIR and Whitfield's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

**ANSWER:** Defendants deny any infringement in the following marks: LAX, JFK, SFO, ORD, LHR, and KIN. Defendants deny deceiving any consumers as to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 53 and therefore deny the same.

54. NXT NOIR's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** Defendants deny any unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 54 and therefore deny the same.

55. NXT NOIR and Whitfield's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this

court. Plaintiff has no adequate remedy at law.

**ANSWER:** Defendants deny causing any immediate and irreparable harm or injury to Plaintiff, or to its goodwill and reputation. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 55 and therefore deny the same.

56. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, NXT NOIR's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

**ANSWER:** Defendants deny Plaintiff is entitled to any relief, or injunctive relief or an award of actual damages. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 56 and therefore deny the same.

## <u>COUNT THREE (Federal Trade Dress Infringement)</u>

57. Plaintiff repeats and realleges paragraphs 1 through 56 hereof, as if fully set forth herein.

**ANSWER:** Defendants repeats and re-alleges its answers set forth in paragraphs 1–56 of the Complaint as if fully set forth herein.

58. The unregistered trade dress found in TERMINAL B's consistent overall look and its primary identifying characteristic are subject to protection from infringement because it is inherently distinctive.

**ANSWER:** Defendants deny infringing upon unregistered trade dress found in TERMINAL B's consistent overall look and its primary identifying characteristic. Defendants deny that Plaintiff's trade dress is inherently distinctive. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 58 and therefore deny the same.

59. TERMINAL B's overall look is comprised of specific design and thematic elements which makes it inherently distinctive. These elements include the prominent use of three letter airport codes for its product names to connect each fragrance to a specific and corresponding destination, along with the use of terms such as "TERMINAL B," "DPT DEPARTURES" and "ARV ARRIVALS" to further emphasize the travel theme. As well the use of black packaging with bold, prominent white letters for each airport code donned on the labels makes it distinct in its respective Class for candles and fragrance products.

**ANSWER:** Defendant asserts that the overall look of the trade dress of Plaintiff's products and Defendant's products are not similar. Defendants deny using any trade dress of Plaintiff's including the use of the following terms "TERMINAL B," "DPT DEPARTURES" and "ARV ARRIVALS". Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 59 and therefore deny the same.

60. The elements comprised within TERMINAL B's trade dress are nonfunctional. The three-letter airport codes, combined with black and white packaging are non-essential to the use of or purpose for using its candle. The core function of the fragranced candle itself is to provide light and to fill the room with fragrance – functioning in many cases as an "air freshener." None of the cited elements support its functionality from that regard.

1

2          **ANSWER:** Defendants deny using any trade dress of Plaintiff's. Defendants

3     are without sufficient knowledge or information to admit or deny the remaining

4     allegations of paragraph 60 and therefore deny the same.

5

6          61. TERMINAL B's trade dress is inherently distinct, and the codes are not

7     generic. While there may be a plethora of candles on the market which use black and

8     white for its packaging, there are currently no branded candles on the market which

9     utilize predominantly black candle labels and packaging, with bold, white lettering

10    and three letter airport codes to identify the specific product. We believe the adoption

11    of airport codes is distinctive by itself, making likelihood of confusion greater for any

12    subsequent user. As well, the codes are considered to be arbitrary when used with

13    products of this type.

14

15         **ANSWER:** Defendants deny using any trade dress of Plaintiff's. Defendants

16    are without sufficient knowledge or information to admit or deny the remaining

17    allegations of paragraph 61 and therefore deny the same.

18

19         62. There are currently 17,576 three-letter destination airport codes in existence,

20    with only 8,965 airport codes currently in use. Given that no one destination has more

21    than one code, the adoption of this concept gives but a finite array of options that are

22    marketable and well-known enough to entice a customer to purchase from. The

23    average TERMINAL B customer makes its candle selection based on three reasons:

24    (1) the familiarity/popularity of the destination; (2) sentimental attachment to the

25    particular destination (ex: the customer's hometown); and/or (3) the accompanying

26    scent that is paired with the destination. Given this fact, the destinations/codes

27    selected are within themselves a large component of the marketability of the

28    TERMINAL B brand. Selecting the most well-known destinations is critical to its

success, and further limits the pool of three-letter codes to select from.

**ANSWER:** Defendants assert that there are 17,576 three-letter destination airport codes in existence, and Plaintiff has only used 14 three-letter airport codes in commerce and has only applied for 36 total trademarks including the marks in use (which means that Plaintiff has in fact filed a trademark application for less than 1% of all of the airport codes, yet Plaintiff is asserting rights to all three-letter airport codes). Defendants deny using any trade dress of Plaintiff's. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 62 and therefore deny the same.

63. NXT NOIR has, since its inception, willfully and intentionally disregarded the efforts that TERMINAL B has made to distinguish itself within the marketplace. Not only has it adopted highly similar black packaging with white letters and three-letter airport codes to market its candles, but it also mimics the copy and marketing initiatives of the TERMINAL B Brand through its product descriptions, copy on its website and on social media (ex: if TERMINAL B markets its LAX candle, NXT NOIR will market the same candle or post about Los Angeles).

**ANSWER:** Defendants deny any willful or intentional infringement of Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 63 and therefore deny the same.

64. Given the limited number of popular destination codes to choose from, NXT Noir and Whitfield's use of this travel-inspired concept while utilizing three-letter codes circumvents TERMINAL B's rights to expand its brand.

**ANSWER:** Defendants deny the allegations. Defendants are without sufficient

knowledge or information to admit or deny the remaining allegations of paragraph 64 and therefore deny the same.

65. NXT NOIR and Whitfield's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of NXT NOIR with TERMINAL B.

**ANSWER:** Defendants deny any willful or intentional infringement of Plaintiff's rights. Defendants deny causing any likelihood of confusion, mistake, or deception as to the affiliation, connection, or association of NXT NOIR with TERMINAL B. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 65 and therefore deny the same.

66. NXT NOIR and Whitfield's conduct as alleged herein constitutes trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:** Defendants deny any trade dress infringement. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 66 and therefore deny the same.

67. NXT NOIR and Whitfield's conduct as alleged herein is causing immediate and irreparable harm and injury to TERMINAL B, and to its goodwill and reputation, and will continue to both damage TERMINAL B and confuse the public unless enjoined by this court. TERMINAL B has no adequate remedy at law.

**ANSWER:** Defendants deny any immediate or irreparable harm to Plaintiff's

rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 67 and therefore deny the same.

68. TERMINAL B is entitled to, among other relief, injunctive relief and an award of actual damages, NXT NOIR and Whitfield's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§1116, 1117, together with prejudgment and post-judgment interest.

**ANSWER:** Defendants deny any injury or relief or injunctive relief or actual damages to Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 69 and therefore deny the same.

## **COUNT FOUR (Federal Trademark Dilution)**

69. Plaintiff repeats and realleges paragraphs 1 through 68 hereof, as if fully set forth herein.

**ANSWER:** Defendants repeats and re-alleges its answers set forth in paragraphs 1–68 of the Complaint as if fully set forth herein.

70. TERMINAL B Marks are distinctive and a "famous mark" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

**ANSWER:** Defendants deny that TERMINAL B Marks are distinctive or "famous mark" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c). Defendants assert that TERMINAL B has **NO Protectable Rights** in the

Infringing Marks (LAX, JFK, SFO, ORD, LHR, and KIN). Defendants also assert that TERMINAL B has **NO Exclusive Rights** in the Infringing Marks. Further, Defendants assert that TERMINAL B does **not** hold any federal trademark rights for the "Infringing Marks: LAX, JFK, SFO, ORD, LHR, and KIN." Defendants further assert that TERMINAL B does **not** hold any common law trademark rights for the following marks: **ORD, LHR, and KIN** as they were filed with the USPTO as an "intent to use" marks and have **no** use in commerce. Furthermore, Defendants assert that a third party (Charla L. Fowlkes) owns the trademark rights to "**LAX & LUX CANDLES**" (Reg. No. 6,657,784) as such TERMINAL B would **not** hold any common law trademark rights for the mark **LAX**. Lastly, Defendants assert that it holds superior common law rights to the following marks: **JFK and SFO** based on Defendants prior use of those marks in commerce prior to Terminal B's filing of its "intent to use" applications filed on those same marks with the USPTO. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 70 and therefore deny the same

71. TERMINAL B Marks became distinctive and famous prior to the Defendant's acts as alleged herein.

**ANSWER:** Defendants deny that TERMINAL B Marks are distinctive or "famous mark". Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 71 and therefore deny the same

72. NXT NOIR and Whitfield's acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of TERMINAL B's Marks.

**ANSWER:** Defendants deny that they have diluted or are likely to dilute the

distinctive quality of TERMINAL B's Marks. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 72 and therefore deny the same

73. NXT NOIR and Whitfield's acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish TERMINAL B Marks by undermining and damaging the valuable goodwill associated therewith.

**ANSWER:** Defendants deny the allegations of tarnish. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 71 and therefore deny the same

74. NXT NOIR and Whitfield's acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act and have already caused TERMINAL B irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

**ANSWER:** Defendants deny any injury or relief or injunctive relief or actual damages to Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 69 and therefore deny the same.

75. TERMINAL B is entitled to, among other relief, an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

Defendants deny any injury or relief or injunctive relief or actual damages to

Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 69 and therefore deny the same.

## COUNT FIVE (UNFAIR COMPETITION)
### Cal. Bus. & Prof. Code §§ 17200 et seq.

76. Plaintiff repeats and realleges paragraphs 1 through 75 hereof, as if fully set forth herein.

**ANSWER:** Defendants repeats and re-alleges its answers set forth in paragraphs 1–75 of the Complaint as if fully set forth herein.

77. NXT NOIR's and Whitfield's acts constitute unfair competition as defined in Business Professions Code sections 17200 et seq., including without limitation NXT NOIR's and Whitfield's unlawful acts in violation of 15 U.S.C. §§ 1114 and 1125, and 17 U.S.C. §§ 101 et seq.

**ANSWER:** Defendants deny the allegations of unfair competition. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 77 and therefore deny the same

78. Plaintiff has suffered injury in fact and has lost money and property, including without limitation loss of sales and revenue, as a result of NXT NOIR's and Whitfield's acts of unfair competition.

**ANSWER:** Defendants deny the allegations above and that Plaintiff suffered an injury. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 78 and therefore deny the same

79. Plaintiff requests temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining NXT NOIR and Whitfield, and those acting in concert with NXT NOIR and Whitfield, from advertising for sale, distributing, marketing, selling, or receiving the proceeds from sales of: the products using the Infringing Marks; any product using Plaintiff's trade dress or TERMINAL B MARKS; and any product using the TERMINAL B trademarks, logos, designs, and designations identical to or confusingly similar to the TERMINAL B MARKS, Plaintiff's trade dress, and any like marks, in any manner.

**ANSWER:** Defendants deny any injury or relief or injunctive relief or actual damages to Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 79 and therefore deny the same.

## <u>COUNT SIX (FALSE ADVERTISING)</u>
### <u>Cal. Bus. & Prof. Code §§ 17500 et seq.</u>

80. Plaintiff repeats and realleges paragraphs 1 through 79 hereof, as if fully set forth herein.

**ANSWER:** Defendants repeats and re-alleges its answers set forth in paragraphs 1–79 of the Complaint as if fully set forth herein.

81. NXT NOIR's and Whitfield's acts constitute untrue and misleading advertising as defined by Business & Professions Code sections 17500 et seq., done with intent to induce members of the public to purchase NXT NOIR's and Whitfield's infringing products.

**ANSWER:** Defendants deny the allegations above regarding any untrue and/or misleading advertising. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 81 and therefore deny the same

82. Plaintiff requests a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining NXT NOIR and Whitfield, and those acting in concert with NXT NOIR and Whitfield, from advertising for sale, distributing, marketing, selling, or receiving the proceeds from sales of: any product using TERMINAL B MARKS, Plaintiff's trade dress, and any product using the TERMINAL B MARKS, logos, designs, and designations identical to or confusingly similar to the Plaintiff's trade dress, the TERMINAL B MARKS, and any like marks, in any manner.

**ANSWER:** Defendants deny any injury or relief or injunctive relief or actual damages to Plaintiff's rights. Defendants are without sufficient knowledge or information to admit or deny the remaining allegations of paragraph 82 and therefore deny the same.

WHEREFORE, Plaintiff requests judgment against the Defendants as follows:

## ANSWER TO PRAYER FOR RELIEF

Defendants denies that Plaintiff is entitled to any relief in this matter. Accordingly, Defendants asks that each of Plaintiff's claims be dismissed with prejudice and that the Court decline to grant Plaintiff any relief requested in its Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear under applicable law and rules, and specifically reserving its right to assert additional affirmative defenses as additional information or materials become available through discovery or otherwise, Defendants hereby asserts the following affirmative defenses.

## FIRST AFFIRMATIVE DEFENSE
## (Non-Infringement)

Defendants has not done anything likely to cause confusion, mistake, or confusion regarding sponsorship or affiliation with respect to Plaintiff or Plaintiff's products, as demonstrated by the differences between the Parties' respective marks and the use of other source identifying indicia of origin in connection with Defendants products.

## SECOND AFFIRMATIVE DEFENSE
## NON- INFRINGEMENT OF TRADE DRESS
## (Non-Distinctiveness / Lack of Secondary Meaning)

Plaintiff's Trade Dress is Non-distinctive / lack of secondary meaning. Defendants further assert that Plaintiff's trade dress is common and/or that it serves only to identify the product, not its origin, so it lacks secondary meaning. Therefore it is not protectable.

## THIRD AFFIRMATIVE DEFENSE
## NON- INFRINGEMENT OF TRADE DRESS
## (Functional)

Plaintiff's Trade Dress is Functional. Defendants assert that Plaintiff's trade dress is functional, therefore it is not protectable.

## FOURTH AFFIRMATIVE DEFENSE
## NON- INFRINGEMENT OF TRADE DRESS
### (Brand Name)

Plaintiff's prominent display of its brand name TERMINAL B on its products or trade dress greatly reduces the risk of any likelihood of confusion between the Plaintiff's other marks and Defendant's other marks. Defendants brand name or logo displaying NXT NOIR on its products or trade dress can overcome a claim of infringement. Defendants use of its mark NOW BOARDING in combination with Defendant's other marks on the trade dress can overcome a claim of infringement.

## FIFTH AFFIRMATIVE DEFENSE
## NON- INFRINGEMENT OF TRADE DRESS
### (Fair Use)

Defendants uses the trade dress not to identify the source or origin of the goods, but merely to describe them.

## SIXTH AFFIRMATIVE DEFENSE
### (Descriptive Fair Use)

Plaintiff has accused Defendants of using a wide variety of images of infringement, some of which are not source identifying marks. Trademark rights are limited to the trademarks used in commerce, and do not encompass rights for marks not used in commerce, nor rights for the general concept of all three-digit airport codes. Defendants assert that there are 17,576 three-letter destination airport codes in existence, and Plaintiff has only used 14 three-letter airport codes in commerce and has only applied for 36 total trademarks including the marks in use (which means that Plaintiff has in fact filed a trademark application for less than 1% of all of the airport codes, yet Plaintiff is asserting rights to all three-letter airport codes).

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTER CLAIMS

## SEVENTH AFFIRMATIVE DEFENSE

### (No - Unfair Competition)

Defendants did not engage in any alleged unlawful business act or practice. As such, underlying violation did not occur, or that the alleged act or practice did not violate the law.

## EIGTH AFFIRMATIVE DEFENSE

### (Unavailability of Injunctive Relief)

Plaintiff is not entitled to injunctive relief (temporarily, preliminarily, or permanently), including because any injury to it is not immediate or irreparable, Plaintiff would have an adequate remedy at law, the balance of hardships favors no injunction, and the public interest is best served by no injunction.

## NINTH AFFIRMATIVE DEFENSE

### (Contributory Negligence, Assumption of the Risks, and/or Want of Care)

Plaintiff's alleged injuries and damages, which Defendants now denies, may have been caused in whole or in part by Plaintiff's own culpable conduct, intentional acts, contributory negligence, assumption of the risks, and/or want of care.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff has failed to state a claim upon which relief can be granted, in law or in equity.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant is entitled to, and claims the benefit of, all defenses and presumptions set forth in or arising from any rule of law or statute in this State and any other state whose law is deemed to apply in this case. Defendant hereby reserves

the right to amend their answer to assert any other defenses, affirmative or otherwise, that may become available during discovery proceedings in this case.

# COUNTER CLAIMS

1. Cross-Complaint, NXT NOIR, LLC (hereafter "NXT NOIR" and/or Cross-Complaint) by and through its attorney, Allan HOWARD GRANT of GRANTS LAW FIRM hereby files its Counter Claim for Declaratory Judgment and Declaratory Relief against Cross-Defendant, TERMINAL B INTL LLC (hereafter "TERMINAL B" and/or "Cross-Defendant) and Demands a Jury.

# NATURE OF THE ACTION

2. Cross-Complaint has filed counter claims in this action for: (i) Declaratory Judgement of Non-Infringement of the following marks (ORD, LHR, and KIN); (ii) Declaratory Judgement of Non-Infringement of the following mark (LAX); (iii) Declaratory Judgement of Non-Infringement of the following marks (SFO and JFK); (iv) Declaratory Relief for Unenforceability of Trademark and Trade Dress – Overall Look and Shape of Products; (v) Declaratory Relief for Unenforceability of Unfair Competition Claim; and (vi) Declaratory Relief for Unenforceability of False Advertising Claim; against the Cross-Defendant.

# JURISDICTION

3. This is an action for declaratory judgment arising under (i) the Trademark Laws of the United States, 15 U.S.C. § 1051, et seq. (the "Trademark Act"); (ii) 15 U.S.C. § 1125, et seq. (the "Lanham Act"); (iii) 15 U.S.C. § 1119; and (iv) 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act").

4. This Court has jurisdiction over these counterclaims under 28 U.S.C. §§ 1331, 1332, 1338, 1367, 2201, and 2202; and 15 U.S.C. § 1121.

5. Cross-Defendant (Plaintiff) has consented to personal jurisdiction by filing his Complaint and advancing claims in this judicial district.

6. Venue for these counterclaims is appropriate pursuant to 28 U.S.C. § 1391.

7. By filing his Complaint, Cross-Defendant (Plaintiff) has sought to impose liability on Defendant, NXT NOIR, LLC for alleged trademark infringement, false designations of origin, unfair competition, and trademark dilution under federal law, California statutory law, and California common law. NXT NOIR is not liable for the alleged trademark infringement, false designations of origin, unfair competition, and trademark dilution. Consequently, an actual controversy exists between the parties.

8.     This court has subject matter jurisdiction over this action pursuant to 15 U.S.C. §§1051 et seq., 28 U.S.C. §§ 1331, [1332(a)] and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

9. Venue is proper in this District because a substantial part of the events giving rise to the claims occurred in this Judicial District.

## PARTIES

10. Cross-Complainant, NXT NOIR, LLC (hereinafter "NXT Noir"), is a limited liability company formed under the laws of California, and does business in Murietta, California.

11. Cross-Defendant, Terminal B Intl, LLC (hereinafter "Terminal B"), is a limited liability company formed under the laws of California and doing business in Long Beach, California.

1

2

## **FACTS**

3        12.    TERMINAL B has filed a lawsuit against NXT NOIR alleging:

4  (i) Trademark Infringement of the following marks: LAX, JFK, SFO, ORD, LHR, and

5  KIN; (ii) infringement of Plaintiff's trademarks under Section 32(1) of the Lanham

6  Act, 15 U.S.C. § 1114(1); (iii) trade dress infringement; (iv) unfair competition and

7  false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §

8  1125(a);  (v) dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

9  and (vi) substantial and related claims of trademark infringement and unfair

10  competition under the statutory and common laws of the State of California, all arising

11  from the NEXT NOIR's unauthorized use of the following marks: LAX, JFK, SFO,

12  ORD, LHR, and KIN in connection with the manufacture, distribution, marketing,

13  advertising, promotion, offering for sale, and/or sale of NEXT NOIR's candle goods.

14

15        13.    Cross-Complaint (NXT NOIR) assert that Cross-Defendant (TERMINAL

16  B) has **NO Protectable Rights** in the Infringing Marks (LAX, JFK, SFO, ORD, LHR,

17  and KIN) for the below reasons:

18        -      NXT NOIR asserts that TERMINAL B does **not** hold any federal

19  trademark rights for the "Infringing Marks: LAX, JFK, SFO, ORD, LHR, and KIN";

20        -      NXT NOIR asserts that TERMINAL B does **not** hold any common law

21  trademark rights for the following marks: LHR, KIN, and ORD as they were filed

22  with the USPTO as an "intent to use" marks and have **no use in commerce**. As such,

23  TERMINAL B would **not** hold any federal or common law trademark rights for the

24  marks **LHR, KIN, and ORD**, as they have not been used in commerce. Attached

25  herewith as **EXHIBIT A** is a true and correct copy of TERMINAL B's USPTO

26  applications that were filed on April 15, 2022, April 25, 2022, and June 11, 2022 for

27  each of the following trademarks: LHR, KIN, and ORD.

28        -      NXT NOIR asserts that a third party (Charla L. Fowlkes) owns the

trademark rights to "**LAX & LUX CANDLES**" (Reg. No. 6,657,784, attached herewith as **Exhibit B** is a true and correct copy of Charla L. Fowlkes registration certificate). As such TERMINAL B would **not** hold any federal or common law trademark rights for the mark **LAX**. Attached herewith as **EXHIBIT C** is a true and correct copy of TERMINAL B's USPTO applications filed for the following trademark LAX.

- NXT NOIR asserts that it holds superior common law rights to the following marks: **JFK and SFO** based on NXT NOIR's prior use of those marks in commerce prior to Terminal B's filing of its "intent to use" applications filed on those same marks with the USPTO, as discussed and shown below in Exhibits D, E, and F.

14. Attached herewith as **EXHIBIT D** is a true and correct copy of NXT NOIR's USPTO application showing actual use of the mark SFO in commerce. NXT NOIR asserts a <u>date of first use in commerce at least as early as March 16, 2022</u> for the mark **SFO.**

15. Attached herewith as **EXHIBIT E** is a true and correct copy of NXT NOIR's website showing actual use of the mark JFK in commerce. NXT NOIR asserts a <u>date of first use in commerce at least as early as March 16, 2022</u> for the mark **JFK**.

16. Attached herewith as **EXHIBIT F** is a true and correct copy of TERMINAL B's USPTO applications that were both filed on April 15, 2022 as "<u>intent to use</u>" marks for each of the following trademarks: **JFK and SFO**.

17. Therefore, NXT NOIR asserts that it then holds superior common law rights to the following marks: **JFK and SFO** based on NXT NOIR's *prior use* of those marks in commerce **prior** to Terminal B's filing of its "<u>intent to use</u>"

applications filed on those same marks with the USPTO.

18.    Cross-Complainant (NXT NOIR) asserts that it has used sixteen (16) three digit airport codes in commerce as its trademarks. Those 16 three digit airport codes trademarks are: ATL, MIA, DFW, LAX, JFK, CLT, SFO, IAD, PAP, DTW, DEN, MSY, ORD, LHR, KIN, and MCI. Attached herewith as **EXHIBIT G** is a true and correct copy of NXT NOIR's website showing actual use of those marks: ATL, MIA, DFW, LAX, JFK, CLT, SFO, IAD, PAP, DTW, DEN, MSY, ORD, LHR, KIN, and MCI in commerce for sale on Cross-Complainant's website.

19.    To date, Cross-Defendant (TERMINAL B) has currently used fourteen (14) three digit airport codes in commerce, which are included in TERMINAL B's trademark filing with the USPTO totaling thirty-one (31) marks for the three digit airport codes. Attached herewith as **EXHIBIT H** is a true and correct copy of TERMINAL B's website showing actual use of those 14 marks: CDG, CPT, EZE, SBA, HNL, LAX, DPS, ARV, SIN, KIX, LVR, NRT, and NRT in commerce for sale on Cross-Defendant's website.

20.    To date there is currently 17,576 three letter destination airport codes in existence. To date, Cross-Defendant (TERMINAL B) has currently used only fourteen (14) three digit airport codes in commerce. Therefore, TERMINAL B has used less than 1% of all of the three letter destination airport codes, yet TERMINAL B wants rights to all of these three digit airport codes, without having use in commerce.

## First Counterclaim
### (**Declaratory Judgment of Non-Infringement**
### **of each of the following marks: ORD, LHR, and KIN**)

21.    Cross-Complainant repeats and incorporates by reference the allegations

contained in paragraphs 1 – 20 as if fully set forth herein.

22. This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq. (the "Trademark Act"), and 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act). As an actual justiciable controversy exists by way of the credible threat of immediate and actual litigation and demand to cease and desist manufacture of NXT NOIR's product and forbearance of manufacture of other similar products, NXT NOIR seeks relief from this Court.

23. Cross-Complainant's (NXT NOIR's) requests an order declaring that each of Cross-Defendant's (TERMINAL B's) trademarks for ORD, LHR, and KIN, which was asserted by the Cross-Defendant, each lacks the requisite legal requirements to be protectable on the Principal Register and/or under common law and to be enforceable:

-       when Cross-Defendant have not yet used each of the alleged trademarks ORD, LHR, and KIN in commerce; and/or

-       when Cross-Complaint has superior common law rights based on an earlier date of first use in commerce for each of the alleged trademarks ORD, LHR, and KIN and wherein each of Cross-Defendant's marks have not yet been registered on the principal registration.

## Second Counterclaim
### (Declaratory Judgment of Non-Infringement
### of the following mark: LAX)

24.     Cross-Complainant repeats and incorporates by reference the allegations contained in paragraphs 1 – 23 as if fully set forth herein.

25. This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq. (the "Trademark Act"), and 28 U.S.C. §§ 2201

and 2202 (the Declaratory Judgment Act). As an actual justiciable controversy exists by way of the credible threat of immediate and actual litigation and demand to cease and desist manufacture of NXT NOIR's product and forbearance of manufacture of other similar products, NXT NOIR seeks relief from this Court.

26. Cross-Complainant's (NXT NOIR's) requests an order declaring that the Cross-Defendant's (TERMINAL B's) trademark for LAX, which was asserted by the Cross-Defendant, lacks the requisite legal requirements to be protectable on the Principal Register and/or under common law and to be enforceable.

### Third Counterclaim
**(Declaratory Judgment of Prior Use and Superior Rights**
**of each of the following marks: SFO and JFK)**

27.     Cross-Complainant repeats and incorporates by reference the allegations contained in paragraphs 1 – 26 as if fully set forth herein.

28. This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq. (the "Trademark Act"), and 28 U.S.C. §§ 2201 and 2202 (the Declaratory Judgment Act). As an actual justiciable controversy exists by way of the credible threat of immediate and actual litigation and demand to cease and desist manufacture of NXT NOIR's product and forbearance of manufacture of other similar products, NXT NOIR seeks relief from this Court.

29. Cross-Complainant's requests for an order declaring that each of Cross-Complaint's trademarks for SFO and JFK have superior common law rights based on an earlier date of first use in commerce when compared to Cross-Defendant's trademarks for SFO and JFK that have a later date of first use in commerce.

30.     Cross-Complainant's requests for an order declaring that each of  Cross-Complaint's trademarks for SFO and JFK has the requisite legal requirements to be protectable on the Principal Register and/or under common law and to be enforceable.

**Fourth Counter Claim**

**DECLARATORY RELIEF**

**(Unenforceability of Trademark and Trade Dress –**

**Based on Overall Look and Shape of Product)**

31.     Cross-Complainant repeats and incorporates by reference the allegations contained in paragraphs 1 – 30 as if fully set forth herein.

32.     This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the credible threat of immediate and actual litigation and demand to cease and desist manufacture of NXT NOIR's product and forbearance of manufacture of other similar products, NXT NOIR seeks relief from this Court.

33.     Cross-Complainant's requests an order declaring that the Cross-Defendant's alleged trademark and trade dress rights for the overall look and shape of the product shape (candle container), lack the requisite legal requirements to be protectable on the Principal Register, and to be enforceable.

34.     Enter a judgement and order declaring NXT NOIR's trade dress does not infringe the trade dress owned by TERMINAL B.

35.     Enter a judgement and order declaring NXT NOIR's trademarks do not

46

infringe the trade dress owned by TERMINAL B's trademarks when compared to one another.

36.    Enter a judgement and order declaring NXT NOIR does not infringe any valid trade dress owned by TERMINAL B.

37.    Enter a judgement and order declaring that TERMINAL B's claimed trade dress is invalid and not enforceable.

## **Fifth Counter Claim**
### **DECLARATORY RELIEF**
### **(Unenforceability of Unfair Competition Claim)**

38.    Cross-Complainant repeats and incorporates by reference the allegations contained in paragraphs 1 – 37 as if fully set forth herein.

39.    This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the credible threat of immediate and actual litigation and demand to cease and desist manufacture of NXT NOIR's product and forbearance of manufacture of other similar products, NXT NOIR seeks relief from this Court.

40.    Cross-Complainant's requests an order declaring that the Cross-Defendant's alleged unfair competition claim, lack the requisite legal requirements to be enforceable.

/ / / /

/ / / /

## Sixth Counter Claim

### DECLARATORY RELIEF

### (Unenforceability of False Advertising Claim)

41.     Cross-Complainant repeats and incorporates by reference the allegations contained in paragraphs 1 – 40 as if fully set forth herein.

42.     This is a declaratory judgment action under the Trademark Laws of the United States, 15 USC § 1051 et seq., the Lanham Act, 15 U.S.C. §1125, et seq. and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. As an actual justiciable controversy exists by way of the credible threat of immediate and actual litigation and demand to cease and desist manufacture of NXT NOIR's product and forbearance of manufacture of other similar products, NXT NOIR seeks relief from this Court.

43.     Cross-Complainant's requests an order declaring that the Cross-Defendant's alleged false advertising claim, lack the requisite legal requirements to be enforceable.

### REQUEST FOR RELIEF

WHERFORE, Cross-Complainant, NXT NOIR, LLC respectfully requests the Court to enter judgment in its favor and against Cross-Defendant, TERMINAL B INTL, LLC and that the Court grant NXT NOIR the following relief :

1. Entering an order declaring that TERMINAL B's trademark for ORD lacks the requisite legal requirements to be protectable on the Principal Register and/or under common law.

2. Entering an order declaring that TERMINAL B's trademark for LHR lacks the requisite legal requirements to be protectable on the Principal Register and/or

under common law.

3. Entering an order declaring that TERMINAL B's trademark for KIN lacks the requisite legal requirements to be protectable on the Principal Register and/or under common law.

4.     Entering an order declaring that TERMINAL B's trademark for LAX lacks the requisite legal requirements to be protectable on the Principal Register and/or under common law.

5.     Entering an order declaring NXT NOIR has superior common law rights with respect to the mark SFO when compared to TERMINAL B's rights and/or an order declaring that TERMINAL B abandon its trademark application with the USPTO for SFO mark.

6.     Entering an order declaring NXT NOIR has superior common law rights with respect to the mark JFK when compared to TERMINAL B's rights and/or an order declaring that TERMINAL B abandon its trademark application with the USPTO for JFK mark.

7.     Entering an order declaring NXT NOIR's trademarks do not infringe the trade dress owned by TERMINAL B's trademarks;

8.     Enter an order declaring NXT NOIR does not infringe any valid trade dress owned by TERMINAL B;

9.     Enter an order declaring that TERMINAL B's claimed trade dress is invalid and not enforceable;

10. Enter an order declaring that NXT NOIR is not engaged in any unfair competition with respect to TERMINAL B's rights;

11. Enter an order declaring that NXT NOIR is not engaged in any false advertising with respect to TERMINAL B's rights;

12. Awarding NXT NOIR costs and reasonable attorneys' fees incurred in connection with this action;

13. Awarding NXT NOIR attorneys' fees and cost because this is an exceptional case incurred in connection with this action; and

14. For such other and further relief as the Court deems just and proper.

DATED: November 17, 2022          GRANT'S LAW FIRM


By: _/ Allan Howard  Grant /
ALLAN HOWARD GRANT
Attorneys for Defendants and
Cross-Complainant, NXT NOIR, LLC